**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALIFORNIA STATE FOSTER PARENT
ASSOCIATION; CALIFORNIA STATE
CARE PROVIDERS ASSOCIATION;
LEGAL ADVOCATES FOR PERMANENT
PARENTING,
　　　　　　　*Plaintiffs-Appellees,*

　　　　　　　v.

JOHN WAGNER, Director of the
California Department of Social
Services, in his official capacity;
MARY AULT, Deputy Director of
the Children and Family Services
Division of the California
Department of Social Services, in
her official capacity,
　　　　　　　*Defendants-Appellants.*

No. 09-15025

D.C. No.
3:07-cv-05086-
WHA

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
William H. Alsup, District Judge, Presiding

Argued and Submitted December 7, 2009
Submission Vacated December 8, 2009
Resubmitted for Decision August 23, 2010
San Francisco, California

Filed August 30, 2010
Amended October 27, 2010

17831

Before: Mary M. Schroeder and Consuelo M. Callahan,
Circuit Judges, and Carlos F. Lucero,* Circuit Judge.

Opinion by Judge Schroeder;
Concurrence by Judge Callahan

_____

*The Honorable Carlos F. Lucero, United States Circuit Judge for the
Tenth Circuit, sitting by designation.

**COUNSEL**

Richard S. Ballinger, Palo Alto, California, for plaintiffs-appellees California State Foster Parent Association, et al.

Susan M. Carson, San Francisco, California, for defendants-appellants John Wagner, et al.

**ORDER**

The Opinion filed August 30, 2010, slip op. 13015, and appearing at ___ F.3d ___, 2010 WL 3385532, is amended as follows:

   1.   Page 13019, line 24: Replace the sentence <The parties have resolved the Foster Parents' chal-

lenge through mediation.> with <Foster Parents filed a motion to voluntarily dismiss their cross-appeal, which was granted by this Court on May 07, 2009.>

2.  Page 13019, line 28: Delete the sentence <This case is therefore now in an unusual posture because the merits, in effect, have already been resolved, in part through the parties' own negotiations and then by another decision of this court.>

3.  Page 13020, line 26: Replace the entire paragraph <We do not address the nature of the remedy here . . . > with <We do not address the nature of the remedy here because the Foster Parents' appeal was voluntary dismissed. The parties agreed that the State's appeal would go forward to address the issue waived in *Allenby II*: the threshold question of whether the Foster Parents may maintain this action under § 1983. We are now therefore squarely faced with the issue of whether the CWA, at 42 U.S.C. §§ 672(a) and 675(4)(A), creates an enforceable federal right.>

4.  Page 13030, line 10: Delete the sentence <Although the district court ruled against Foster parents on the scope of the remedy, that issue has been resolved through mediation.>.

5.  Page 13030, line 13: Add <.> after <dismiss>.

6.  Page 13030, line 14: Delete <and remand solely so that the district court may modify its judgment for consistency with the parties' mediation agreement.>.

7. Page 13030, line 17: Delete <and REMANDED.>.

Judges Schroeder and Lucero have voted to deny the petition for rehearing en banc, and Judge Callahan has voted to grant the petition for rehearing en banc.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

Defendants-Appellants' petition for rehearing en banc is denied.

No further filings will be accepted in this closed case.

---

**OPINION**

SCHROEDER, Circuit Judge:

The federal Child Welfare Act ("CWA" or "the Act") provides money to state governments to pay for children's foster care and adoption assistance programs. 42 U.S.C. § 670 *et seq.* The CWA spells out the specific foster care provider expenses that states' payments are supposed to cover. *See* 42 U.S.C. §§ 672(a) and 675(4)(A). The states then distribute the funds to the actual families and institutions that provide care.

In California, foster parents have become concerned because the State's payments are not covering their costs to the extent allegedly required under the federal law. Plaintiffs in this case are three associations representing individual foster parents in the State of California: the California State Foster Parent Association, the California State Care Providers Association, and Legal Advocates for Permanent Parenting (collectively, "Foster Parents"). They brought this suit against

officials of the State of California ("the State") under 42 U.S.C. § 1983 claiming a violation of their federal right to payments under the CWA and seeking declaratory and injunctive relief. Foster Parents seek to compel the State to revise its payment schedule upward in order to reflect Foster Parents' actual costs.

The State moved to dismiss on the ground that the CWA does not create rights enforceable under § 1983. The district court denied the motion and ultimately entered judgment in favor of Foster Parents, finding that the CWA created a federal monetary entitlement and that the State violated the Act by setting rates without considering the CWA's mandatory cost factors. Both sides appealed from the final order, with the State contesting the district court's finding of an enforceable federal right, and the Foster Parents challenging other aspects of the district court's summary judgment order. Foster Parents filed a motion to voluntarily dismiss their cross-appeal, which was granted by this Court on May 07, 2009. Before us now is only the State's appeal contending Foster Parents have no enforceable right to higher payments.

We recently decided *California Alliance of Child and Family Services v. Allenby*, 589 F.3d 1017 (9th Cir. 2009) ("*Allenby II*"), a similar case brought by institutional providers of foster care. The district court in that case held that the CWA created a right enforceable under § 1983. *California Alliance of Child and Family Servs. v. Allenby*, 459 F. Supp. 2d 919, 925 (N.D. Cal. 2006) ("*Allenby I*"). The district court in this case relied heavily on the district court's opinion in *Allenby I*.

When *Allenby I* reached this court, however, the State had declined to appeal the issue of whether the CWA created a right enforceable under § 1983, and we therefore assumed, without deciding, that it did. *Allenby II*, 589 F.3d at 1020 n.5. We went on to reach the merits of the institutional providers' claim and held that the State had failed to comply with the

CWA's mandatory cost factors, because even though the State's original payment schedule in 1990 was based on the costs enumerated in the statute, the State had not complied with its own plan to adjust the payments for inflation. *Id.* at 1019-23.

The district court viewed these plaintiffs as having an even stronger case on the merits than the institutional providers in *Allenby*. On summary judgment, the district court found that the State failed to provide evidence that the payments to individual foster care providers were ever based on the CWA's itemized list of costs, and that Foster Parents had provided uncontroverted evidence that their rates had "fallen further out of line with the cost of providing the enumerated items than had the institutional rates" addressed in *Allenby*. The court ordered a remedy that would bring about "substantial compliance" with the federal statute.

We do not address the nature of the remedy here because the Foster Parents' appeal was voluntary dismissed. The parties agreed that the State's appeal would go forward to address the issue waived in *Allenby II*: the threshold question of whether the Foster Parents may maintain this action under § 1983. We are now therefore squarely faced with the issue of whether the CWA, at 42 U.S.C. §§ 672(a) and 675(4)(A), creates an enforceable federal right.

We hold that it does. The district court correctly permitted the Foster Parents' action to go forward because the CWA grants foster care providers a federal statutory right to payments that cover certain enumerated costs, a right redressable under § 1983. As we explain more fully below, this conclusion flows from the controlling Supreme Court and Ninth Circuit authority governing when federal statutes create federal rights enforceable through 42 U.S.C. § 1983. *See Gonzaga University v. Doe*, 536 U.S. 273, 122 S. Ct. 2268, 153 L. Ed. 2d 309 (2002); *Blessing v. Freestone*, 520 U.S. 329, 117 S.

Ct. 1353, 137 L. Ed. 2d 569 (1997); *Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004).

## DISCUSSION

The Child Welfare Act, also known as Title IV-E of the Social Security Act, was adopted in 1980 to enable states to provide foster care and adoption assistance for children in need of such services. 42 U.S.C. § 670. The Act establishes a program through which the federal government provides funding to states to cover the costs of administering the foster care system. 42 U.S.C. § 670 *et seq.* State receipt of funds is conditioned upon submission of a plan for assistance to the Department of Health and Human Services for approval. 42 U.S.C. § 671(a). The CWA requires that participating states use the federal funds to reimburse foster parents for identified out-of-pocket costs. 42 U.S.C. §§ 671(a)-(b), 672, 675(4)(A).

[1] The two principal statutory provisions at issue in this case are 42 U.S.C. § 672(a), which requires states to make "foster care maintenance payments" on behalf of each foster child, and § 675(4)(A), which defines the term "foster care maintenance payments" as payments to cover enumerated categories of costs. Section 672(a) mandates that "[e]ach State with a plan approved under this part . . . make foster care maintenance payments on behalf of each child" qualifying for foster care. 42 U.S.C. § 672(a). Section 675(4)(A) defines "foster care maintenance payments" as

> payments to cover the cost of (and the cost of providing) food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement.

42 U.S.C. § 675(4)(A).

Foster Parents contend that §§ 672(a) and 675(4)(A) create a federal right to payments that are based upon consideration of the expenses enumerated in the Act. The district court agreed. The State, on appeal, maintains that Foster Parents have no remedy with this court because the identified provisions of the CWA do not create an individually enforceable federal right.

**[2]** We review de novo the district court's decision on a motion to dismiss. *Fireman's Fund Ins. Co. v. City of Lodi*, 302 F.3d 928, 939 (9th Cir. 2002). The district court, recognizing that this court had not passed on the precise question presented here, relied on our decision in *Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004), which found an enforceable right in a highly analogous statutory provision. We agree.

The Supreme Court has repeatedly recognized that a federal statute can create an enforceable right under § 1983 when it explicitly confers a specific monetary entitlement on an identified beneficiary. *See Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S. Ct. 2510, 110 L. Ed. 2d 455 (1990) (recognizing health care providers' right to reasonable reimbursement rates under the Medicaid Act); *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 107 S. Ct. 766, 93 L. Ed. 2d 781 (1987) (recognizing public housing tenants' right to reimbursement for utilities charges in excess of rental costs permitted by the Public Housing Act); *see also Gonzaga*, 536 U.S. at 280 (reaffirming *Wilder* and *Wright*).

**[3]** The inquiry into whether a statute creates a right enforceable under § 1983 is one of congressional intent. Congress's intent to benefit the plaintiff must be "unambiguous." *Gonzaga*, 536 U.S. at 283. The touchstone is "whether Congress *intended to create a federal right*." *Id.* The Court explained that "broader or vaguer 'benefits' or 'interests' " do not suffice. *Id.*

**[4]** The inquiry begins with the three-part test the Supreme Court established in *Blessing*. *Price*, 390 F.3d at 1109 & n.4. *Blessing*'s test asks:

> (1) whether Congress intended the provision in question to benefit the plaintiff; (2) whether the plaintiff has demonstrated that the asserted right is not so vague and amorphous that its enforcement would strain judicial competence; and (3) whether the provision giving rise to the right is couched in mandatory, rather than precatory, terms.

*Id.* at 1109 (quoting *Blessing*, 520 U.S. 329, 340-41 (1997)) (internal quotation marks omitted).

**[5]** We have held that *Blessing*'s first factor calls for evaluating the "provision in question," and requires that we identify the particular statutory provision at issue. *ASW v. Oregon*, 424 F.3d 970, 977 (9th Cir. 2005). "We do not look at the Act in its entirety and determine at that level of generality whether it creates individual rights." *Id.* As the district court recognized, Foster Parents' asserted right is for reimbursement of costs, and this statute is almost identical in structure to the one this court recognized as creating an enforceable right in *Price*.

**[6]** In *Price*, we analyzed §§ 104(d) and (k) of the Housing and Community Development Act ("HCDA") to determine whether they created a right enforceable under § 1983. 390 F.3d at 1110. Like the CWA, the HCDA supports state programs through federal grants, while "impos[ing] specific responsibilities upon grantees." *Id*. Section 104(k) of the HCDA requires that "[e]ach grantee shall provide for reasonable benefits to any person involuntarily and permanently displaced as a result of the use of assistance received under this chapter to acquire or substantially rehabilitate property." *Id.* (quoting 42 U.S.C. § 5304(k)). In tandem with § 104(k), § 104(d)(2)(A)(iii) "precisely enumerates the monetary benefits to which displaced persons of low and moderate income

are entitled, 'including reimbursement for actual and reasonable moving expenses, security deposits, credit checks, and other moving-related expenses, including any interim living costs.' " *Id.* at 1112 (quoting 42 U.S.C. § 5304(d)(2)(A)(iii)). *Price* held that §§ 104(d)(2)(A)(iii) and (k) satisfy the requirements of *Blessing* and *Gonzaga* because § 104(k) "unambiguously establishes an individual right to 'reasonable benefits' " whereas § 104(d)(2)(A)(iii) "spell[s] out the content" of the right to reasonable benefits by detailing the expenses that benefits should cover. *Id.* at 1114.

The CWA similarly contains a provision creating a right, in § 672(a), and a provision "spelling out the content" of that right in § 675(4)(A). The asserted right under the statutory language in question, is therefore the right to foster care maintenance payments that cover the cost of the expenses enumerated in § 675(4)(A).

Once we have identified the provision in question, *Blessing*'s first factor asks "whether Congress intended [it] to benefit the plaintiff." *Price*, 390 F.3d at 1109. For the following reasons, we conclude that Congress intended for §§ 672(a) and 675(4)(A) to benefit Foster Parents as the caregivers for foster children.

The CWA unambiguously designates foster parents as one of three types of recipients who can receive funds on foster children's behalf. *See* § 672(a)-(c). Section 672(a) requires the State to make foster care maintenance payments "on behalf of each child" qualifying for foster care. Section 672(b) further specifies that foster care maintenance payments may be made on behalf of a qualifying child only to (1) an "individual" providing a "foster family home"; (2) "a public or private child-placement or child-care agency"; or (3) a "child-care institution." 42 U.S.C. § 672(b). Section 672(c) defines a "foster family home" as "foster family home for children which is licensed by the State in which it is situated . . . ." 42 U.S.C. § 672(c). Thus, § 672, read as a whole, establishes that partic-

ipating states must make foster care maintenance payments on behalf of each child to a foster care provider such as individual foster parents. Our conclusion thus follows from the text and structure of the CWA. *See Ball v. Rodgers*, 492 F.3d 1094, 1105 (9th Cir. 2007) (citing *Gonzaga*, 536 U.S. at 286) (evidence of congressional intent to create a federal right "can be found in a statute's language as well as in its overarching structure").

The State asks us to follow *Gonzaga*, where the Supreme Court held that the language of the Family Educational Rights and Privacy Act ("FERPA") did not create an enforceable right. *See* 536 U.S. at 276. The State's reliance on *Gonzaga* is misplaced, because the language of FERPA materially differs from that of the CWA.

The relevant FERPA provision states: "No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein . . . ) of students without the written consent of their parents to any individual, agency, or organization." *Gonzaga*, 536 U.S. at 279 (quoting 20 U.S.C. § 1232g(b)(1)). The plaintiff in *Gonzaga*, a student, sought to rely on FERPA to obtain compensatory and punitive damages from his university, which had released adverse personal information to the Washington State teacher certification agency without his consent. *Id.* at 277. The Supreme Court held that FERPA did not create an enforceable right because the statute's focus was not on individual beneficiaries. *Id.* at 287. The Court emphasized that FERPA spoke in terms of the "person regulated"— educational agencies and institutions— rather than the "individuals protected"— the students and their families. *Id.* The Court also stressed that the provision had an "aggregate focus" on "institutional policy and practice" rather than focusing on "individual instances" of noncompliance. *Id.* at 288 (internal quotation marks omitted). Congress did not contemplate terminating funding on the

basis of one violation of the privacy standards, but only where an institution had broader policies and practices that violated FERPA. *Id.* The Court therefore concluded that an individual student's situation was not Congress's major concern— institutions were.

In contrast, § 672 of the CWA focuses squarely on the individuals protected, rather than the entities regulated. It does not purport to regulate state institutions. Section 672(a) is about payments "on behalf of each child," payments which are directed to foster parents pursuant to § 672(b). As noted by the district court in *Allenby I*, the foster care providers' relationship with the statutory guarantee is direct: "In contrast [to FERPA], the CWA contemplates payments directly to providers, and the providers seek enforcement of that right." 459 F.Supp. 2d at 924. The CWA is therefore materially different from FERPA in its focus.

**[7]** Also unlike FERPA, § 672's reference to "payments on behalf of *each* child" is individual, rather than aggregate. *See* § 672(a)(1) (emphasis added). It is true that foster care maintenance payments differ from adoption assistance payments in that foster care payments are set by a schedule of universal rates rather than individualized determinations of need. *See Allenby II*, 589 F.3d at 1018-19 (describing California's rate schedule for foster care maintenance payments); *ASW*, 424 F.3d at 976 (holding that CWA entitles adoptive parents to individualized payment determinations). The CWA is clear, however, that the State must make a foster care maintenance payment on *each* child's behalf. § 672(a)(1). Section 672(a)'s focus on individual foster children and § 672(b)'s specific language designating foster care providers to receive payments on foster children's behalf together unambiguously reflect Congress's intent that foster care maintenance payments benefit individual foster parents. The first *Blessing* factor therefore militates in favor of the creation of an enforceable right.

**[8]** The second *Blessing* factor asks "whether the plaintiff has demonstrated that the asserted right is not so vague and amorphous that its enforcement would strain judicial competence." *Price*, 390 F.3d at 1109. The State argues that the CWA is too vague because it does not specify how rates should be set to cover the enumerated costs, and that no regulations governing the calculation of foster care maintenance payments fill the gap. We disagree. Our precedent strongly suggests, if not compels, the conclusion that the asserted right is sufficiently specific. The itemized list of expenses to be covered under § 675(4)(A) is very similar to those that we found to be "precisely enumerate[d]" in *Price*. *See* 390 F.3d at 1112.

In *Price*, the displaced persons were entitled to "reimbursement for actual and reasonable moving expenses, security deposits, credit checks, and other moving-related expenses, including any interim living costs." *Id.* Here, the statute contemplates similarly concrete expenditures including "food, clothing, shelter, daily supervision, school supplies, a child's personal incidentals, liability insurance with respect to a child, reasonable travel to the child's home for visitation, and reasonable travel for the child to remain in the school in which the child is enrolled at the time of placement." *See* 42 U.S.C. § 675(4)(A). There is no basis for concluding that the statute here is any less specific than the statute examined in *Price*.

We agree with Foster Parents that courts may review the State's compliance with a requirement to set rates that cover the costs of the enumerated expenditures. If a statute or applicable federal requirement does not prescribe a particular methodology for calculating costs, we give deference to a reasonable methodology employed by the State. *See Wilder*, 496 U.S. at 518-19. Though some deference may be owed to the State's methodology, the absence of a uniform federal methodology for setting rates "does not render the [statute] unenforceable by a court." *Id.* at 519. In *Allenby II*, we recognized the lack of methodology specified by federal law to measure

the costs. 589 F.3d at 1021 ("While the CWA identifies the types of items that must be covered, it does not prescribe any particular metric to measure the cost of those items. Each state develops its own plan."). Nonetheless, we did not find that such a statutory gap presented any significant obstacles to adjudicating the parties' dispute, and we required the State to comply with the methodology that the State had itself adopted to implement the CWA. *See id.* at 1023.

**[9]** Other courts considering the combined effect of §§ 672(a) and 675(4)(A) have also concluded that the asserted right satisfies *Blessing*'s second factor. *See C.H. v. Payne*, 683 F. Supp. 2d 865, 877-78 (S.D. Ind. 2010); *Allenby I*, 459 F. Supp. 2d at 925 ("[S]ection 675(4)(a) contains an explicit and detailed provision for determining payments to foster care providers."); *Missouri Child Care Ass'n v. Martin*, 241 F. Supp. 2d. 1032, 1041 (W.D. Mo. 2003) ("Payments [in section 675(4)(A)] are based either on itemized costs or reasonable overhead, issues routinely entrusted to the judiciary in both statutory and common law actions."), *aff'd*, 294 F.3d 1034 (8th Cir. 2002). We have found only one exception. *See Carson P. ex rel. Foreman v. Heineman*, 240 F.R.D. 456, 540-41 (D. Neb. 2006). *Blessing*'s second factor is satisfied.

**[10]** The third and final *Blessing* factor requires that "the provision giving rise to the right is couched in mandatory, rather than precatory, terms." *Price*, 390 F.3d at 1109. In *Price*, this Court concluded that the HCDA's similar provision in 42 U.S.C. § 5304(k) "was clearly mandatory rather than precatory or merely hortatory." *Id.* at 1114. The structure of 42 U.S.C. § 5304(k) is identical to that of 42 U.S.C. § 672(a) because both statutes require that grantee states make payments to identified beneficiaries. *Compare* 42 U.S.C. § 672(a) ("[e]ach State with a plan approved under this part *shall* make foster care maintenance payments") *with* 42 U.S.C. § 5304(k) ("[e]ach grantee [State] *shall* provide for reasonable benefits") (emphases added). Indeed, in this case, the State does not seriously contend that the § 672(a)'s lan-

guage is precatory rather than mandatory. We therefore conclude that § 672(a)'s language is clearly mandatory, satisfying the third and final *Blessing* factor.

**[11]** There is, moreover, an additional important distinction between this case and *Gonzaga* that bolsters our conclusion that §§ 672(a) and 675(4)(A) create an enforceable federal right. Unlike the FERPA, the CWA provides no administrative means through which a foster parent may ask the State to make foster care maintenance payments that cover the mandatory costs. The fact that Foster Parents have no administrative forum in which to raise their concerns lends additional support to our conclusion that Congress intended to create an enforceable right here, just as the presence of an administrative mechanism "buttressed" the Supreme Court's opposite conclusion in *Gonzaga*. *See* 536 U.S. at 289-90. The State is of course correct that the absence of an administrative enforcement mechanism does not compel the conclusion that Congress intended to create a right enforceable in the courts, but it is a relevant consideration that weighs in Foster Parents' favor.

**[12]** For all the above reasons, we hold that §§ 672(a) and 675(4)(A) of the Child Welfare Act establish a presumptively enforceable right under § 1983 to foster care maintenance payments from the State that cover the cost of the expenses enumerated in § 675(4)(A). Though the right itself is only "presumptively enforceable" by § 1983, *Gonzaga*, 536 U.S. at 284, the State has not rebutted the presumption, because the statute contains no express prohibition on enforcement, and there is no administrative mechanism through which aggrieved foster parents can seek redress for inadequate maintenance payments. We therefore hold that Foster Parents have access to a remedy under § 1983 to enforce their federal right.

## CONCLUSION

The district court correctly held that Foster Parents could maintain their suit under § 1983. We therefore affirm the dis-

trict court's order denying the motion to dismiss.

**AFFIRMED**

---

CALLAHAN, Circuit Judge, concurring:

I concur because I agree that the application to this case of the three-part test set forth by the Supreme Court in *Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997), is controlled by our opinion in *Price v. City of Stockton*, 390 F.3d 1105 (9th Cir. 2004). Were I writing on a blank slate, I would not find that there is the requisite "unambiguously conferred right" for a private action under 42 U.S.C. § 1983. *See Gonzaga University v. Doe*, 536 U.S. 273, 283 (2002).